BERMAN v. SHELBY.

Opinion delivered January 3, 1910.

1. APPEAL AND ERROR—INVITED ERROR.—Where appellant requested the court to submit a certain issue to the jury, he cannot complain because the jury determined that issue. (Page 478.)

2. LANDLORD AND TENANT—MUTUALITY OF LEASE.—Where the terms of a lease bind the landlord to put a water heater in the bath room, and bind the tenant to pay rent, upon a failure of the landlord to supply the water heater the tenant may refuse to pay rent and vacate the premises. (Page 478.)

3. PRINCIPAL AND SURETY—ALTERATION.—A surety is discharged by any material and unauthorized alteration of his contract. (Page 478.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellant rented to D. H. and A. L. Shelby by written contract a ten-room house in Fort Smith, together with certain furniture and fixtures therein. A list of the furniture was attached to the lease. The lease contained mutual covenants, on the part of the lessees, that they would pay the rents as specified in the contract, would pay all charges for water, gas and electricity as they came due, would not make alterations in the premises, would not sublet without the consent of the lessor, would keep premises in proper sanitary condition, and surrender same in as good repair as they were then or as they should thereafter be put and other covenants as to boarding certain parties. On the part of the lessor, that he would paint the house and paint the bath tub, that he would leave certain articles of furniture for the use of lessees, among which were one mirror, oil cloth on floor, one machine, one couch, carpet for one room and moulding about

windows, and that he would "put a water heater in the bath room."

The lease was for two years, beginning April 15, 1905. The consideration was $900 per annum, payable in monthly instalments of $75 each. Some days after the lease was executed appellee Boone guarantied the payment of the rent in writing which, after reciting the terms of the lease, is as follows:

"Now, in consideration of said lease to the said Mr. and Mrs. D. H. Shelby and on compliance of the said P. Berman, his heirs and assigns, with the conditions of said lease, I hereby guaranty the payment of the said rent to the said P. Berman or his heirs or assigns." This instrument was attached by appellant's agent to the lease after the lease was executed. The Shelbys occupied the premises until the 1st of August, 1905, when they rented the same to Mrs. Alberfield, who occupied same until the 1st of October, 1905, and on October 4, 1905, the Shelbys gave appellant notice that they considered the lease at an end and declared same cancelled for the following reasons:

"First. You have failed to repair and put in proper sanitary condition the bath tub and bath room on said premises.

"Second. You have removed from said premises, without our knowledge or consent, certain furniture and fixtures which under the terms of said lease were to remain in the building on said premises.

"Third. You have failed to put and keep in proper sanitary condition the cellar underneath said building and also the plumbing, piping, etc., in said cellar.

"Fourth. That you failed to keep in proper sanitary condition by failure to properly construct or to properly repair the sewer on said premises. .

"On account of the conditions as set out in third and fourth specifications above, a stench, almost unbearable at times, is emitted, and the building rendered unfit for the purposes for which it was leased by us."

In answer to this appellant notified appellees in writing that he declined to accept any surrender or cancellation of the lease, and that they could continue to occupy the premises under the lease, otherwise he would take charge of same and rent for the remainder of the term to the best advantage, and for the benefit

of those whom it might concern, but that he would hold appellee, and especially Boone, as guarantor, for the rent of the full term of the lease.

After appellees had abandoned the premises, appellant rented same to other parties, and collected the sum of $899 for rents, which he deducted from the amount he claimed to be due from appellee under the lease contract, leaving a balance of $526.90, for which this suit was brought.

The complaint set up the lease contract with the Shelbys, and the guaranty of the rent by Boone, alleged a breach of the contract by the Shelbys in abandoning the premises and failure to pay the rents, and that by reason of such breach the above amount was due him from the Shelbys and Boone.

Boone answered, denying all the material allegations of the complaint, and for affirmative defense set up "that plaintiff had failed and refused to comply with his contract of lease," and breach of the contract on the part of appellant as per the notice above set forth, and also alleged that he had been released from his contract on account of the act of appellant in modifying said contract, and in making new contracts with the Shelbys.

Appellant's testimony in chief tended to show that appellees vacated the premises he had leased them and had failed to pay the rents for the remainder of the term, that after appellees vacated he had leased to other parties, making the best contracts he could, had given appellees credit for the rents collected under these contracts, and that appellees were still due him, after making these deductions, the amount for which he sued. On cross-examination, among other things, he testified: "The heater was put in the kitchen; everybody got hot water in the tub in the bath room." "He did not put a hot water heater in the bath room. He put it in the kitchen. All a boarder had to do to get hot water for a bath in the bath room was to light the gas in the kitchen and get hot water. The kitchen was in the end of the house down stairs, and the bath room was up stairs. It was a mistake by putting that word (a water heater in the bath room) in there. The heater belonged to the kitchen and boiler. The boiler and heater was one piece of machinery." In regard to this provision of the lease appellee D. H. Shelby testified: "Mr. Berman refused to put the hot water heater in the bath

room. We selected a heater for that purpose, but Mr. Berman decided to put in a cheaper one and put it in the kitchen. I told him at the time that this did not comply with the contract, and I told him the reason why I did not want it in the kitchen. It was a gas heater, and I wanted it in the bath room, so that the boarders could turn on the heat whenever they desired to take a bath. With the heater in the kitchen, the boarders had to go through the kitchen every time they wanted a bath. The kitchen was down stairs, and the farthest room away from the bath room, which was up stairs. It was not desirable to have boarders come down stairs and go through the kitchen to light the heater to get hot water for their baths. They would come in at any time during the night, and we would have to get up to fix the water for them. They would come in from 9 o'clock to 11 o'clock at night, and would want baths."

Mrs. Shelby testified as to this as follows: "The condition of the bath tub and the failure of Berman to put a heater in the bath room had a bad effect upon our business. Prospective roomers would always want to know about the bath, and I would have to show them the conditions, which were not satisfactory; and when we got boarders, they would often go down town to get their baths. I heard Mr. Shelby protest to Mr. Berman about these conditions."

Among other instructions the court gave the following on its own motion:

"1. Before the defendants would be authorized to abandon the house and refuse to pay the rent, it must appear from the evidence that the premises became untenantable as a boarding house by reason of plaintiff's failure to comply with his agreement to repair; and if the jury find from the evidence that plaintiff agreed to make certain repairs, and failed and refused to make them, and defendants, after requesting that repairs be made as agreed to by plaintiff, and he failed and refused to make them, and, by reason of his failure to make same, the property became untenantable as a boarding house, your verdict should be for the defendant. By untenantable as a boarding house, the court tells you is meant unsuitable and not adapted to the purpose of keeping boarders."

And at the request of appellee the following among other prayers:

"8. If you believe from the evidence that there were any material alterations in the contract or lease, or that plaintiff failed to comply with any of the terms of said lease, without the consent of the defendant, T. W. M. Boone, then your verdict must be for the defendant, Boone."

"10. If you believe from the evidence that any material change was made in said contract of lease between the plaintiff and the Shelbys, or that any new agreements were entered into between the said plaintiff and said Shelbys, without the consent of the defendant Boone, then the defendant Boone is released, and your verdict must be for him."

"11. You are further instructed that if any material changes or alterations were made in said contract without the consent of said Boone, this would release the said Boone, even though said changes or alterations might be for the benefit of said Boone."

And at the request of appellant the following:

"8. The defendants set up certain breaches of the lease with plaintiff. You are instructed that the burden is upon the defendants to establish, by a fair preponderance of the evidence, the said breaches upon the part of the plaintiff alleged in the answer, and that for these reasons they canceled same, and if they failed to do so, you should find for the plaintiff."

"11. If plaintiff, instead of putting a water heater in the bath room, put a gas heater with boiler attachment in the kitchen, and defendants, after this hot water attachment was put in, continued to use the premises for several months, and then rented it in this condition to Mrs. Alberfield, who occupied it for several months, and, after she vacated it, defendants attempted to cancel the lease and did cancel it by notice to plaintiff, but such cancellation or attempted cancellation was not on account of failure of plaintiff to put a water heater in the bath room, but for other reasons, then this was waiver of his right to cancel for this reason."

The court among others refused the following prayer of appellant:

"3. If the plaintiff did not paint the bath tub, and did not put hot water attachment to the bath tub, defendant could not for these reasons abandon the contract if the evidence shows

they could have had the bath tub painted, and the hot water attachment put in, as provided by the contract, out of the rents. It was their duty to request compliance with the contract, and, if plaintiff failed to do so, then have the work done and take the cost of same out of the rent, if the rent was sufficient to meet this expense."

There was evidence on behalf of appellees tending to show that appellant had breached his contract of lease in other particulars. But there was a conflict in the evidence as to these. The court gave and refused other prayers bearing upon the issues of fact about which there was a conflict, the correctness of which rulings appellant challenged, but in our view of the case it is unnecessary to notice these.

From a verdict and judgment in favor of appellees this appeal has been duly prosecuted.

*Ira D. Oglesby,* for appellant.

1. There was no testimony on which to base instructions 10 and 11 given at defendants' request. No change of the lease contract is alleged nor proved, neither was there any new agreement entered into between plaintiff and the Shelbys. The lease provided for subletting with the plaintiff's consent, and none except him can complain if the lessee sub-rents without his consent. 59 Tenn. 374; 12 N. Y. St. Rep. 632.

2. Boone is not discharged as surety unless there was a new contract substituted for the original, without his consent, or some alteration in the original in some point so material as, in effect, to amount to a substitution of a new contract. 23 How. (U. S.) 149; 181 Pa. St. 251; 59 Tenn. 374; 7 Hun 244; 161 Pa. 87; 1 Denio 516; 67 Mich. 139.

*Hill, Brizzolara & Fitzhugh* and *A. A. McDonald,* for appellees.

1. The obligations of this contract were mutual, and, the appellant having failed to comply with his part of it, appellees were justified in rescinding it. 65 Ark. 320; 73 Mich. 577; Jones on Landlord and Tenant, § 673.

2. Boone was a surety for the tenant merely; his obligation having been executed separately from that of the tenant, and showing on its face that it was executed in consideration that the landlord would comply with the terms and conditions

of the lease. Any violation of the contract by the landlord, or any material alteration of the contract between the landlord and tenants, without the surety's consent, discharged him. 65 Ark. 550; 77 Ark. 128; 73 Ark. 473; 74 Ark. 600; 72 Ark. 80.

WOOD, J., (after stating the facts). Appellant, in his prayer for instruction number 11, asked the court to submit to the jury the question as to whether or not appellees had waived the right to cancel the lease because of any failure that might have been on the part of appellant to put the water heater in the bath room. Appellant therefore cannot complain of the finding of the jury that there was no such waiver. The case then, as we view it, is as follows: In consideration of the covenants on the part of appellees to pay rents, etc., appellant also covenanted on his part that he would do certain things mentioned in the lease, one of them being that he would "put a water heater in the bath room." The uncontroverted evidence shows that appellant failed to comply with his contract in the above particular, and appellees have not waived compliance with this provision of the contract.

The only question, therefore, is, can appellant compel appellees to comply with their covenants to pay rent when he has failed to comply with his covenant to "put the water heater in the bath room?"

The principles of law decisive of this question have been announced by this court in some very recent cases. *Harris* v. *Wheeler Lumber Co.,* 88 Ark. 491; *Jno. A. Gauger & Co.* v. *Sawyer & Austin Co.,* 88 Ark. 422, and cases cited. In the latter of the above cases we cite *Missouri Pacific Railway Co.* v. *Yarnell,* 65 Ark. 320, where we said: "The obligations of the contract were mutual; and if the appellee failed to comply with it, he could not hold the appellant to a compliance. This is too plain to require argument or authorities. The failure of one party to a contract to comply with its terms releases the other party from compliance with it." The above doctrine furnishes appellees D. H. and H. L. Shelby a complete defense to appellant's claim.

As appellee Boone was a mere guarantor or surety for the Shelbys, the defense that was complete as to his principals of course discharges him. Being a surety, he would have been dis-

charged upon the uncontradicted evidence, even if the Shelbys had not been. For "a surety will be discharged by any material and unauthorized alteration of his contract, and it is immaterial that the principal assured .the obligee that the alteration would not affect the original contract, or that he failed to carry out the contract as altered." *O'Neal* v. *Kelly,* 65 Ark. 550. See also *White River, Lonoke & W. Ry. Co.* v. *Star Ranch & Land Co.,* 77 Ark. 128; *Lawhon* v. *Toors,* 73 Ark. 473; *Singer Mfg. Co.* v. *Boyette,* 74 Ark. 600.

Even if the Shelbys had consented to a different arrangement about the water heater (but they did not) from that specified in the lease, Boone did not consent to any change in the lease. The change was a material one, and, as we have said, according to the above authorities, Boone would have been released from the obligations of his contract, even though the Shelbys were not discharged from their covenants.

We need not inquire concerning other questions. For, under the law, upon the undisputed evidence as to the above, the judgment is right, and it must be affirmed.