INGRAM v. FRED. (No. 8930.) *

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 7, 1918. Rehearing Denied Jan. 18, 1919.)

1. LANDLORD AND TENANT ⟲106, 195(1)— LEASES—REPAIRS.

A tenant, who leased a building for two years for a specific sum payable in monthly installments, may vacate and refuse to thereafter pay rent, where lessor has failed to keep building in repair and tenantable as agreed.

2. COMMON LAW ⟲17 — EVIDENCE — DECISIONS OF COURTS.

Decisions of English courts are not conclusive proof of what common law of England really is, although entitled to great weight, and decisions of different states of Union which have adopted common law of England may be looked to, to determine what common law is.

3. LANDLORD AND TENANT ⟲152(3)—LEASE —DUTY TO REPAIR.

A lease of a building, providing that lessor "shall have reasonable time to repair the same," when notified of leaks, *held* to contemplate that it was duty of lessor to make such repairs upon receiving such notice.

4. LANDLORD AND TENANT ⟲150(1) — REPAIRS—DUTY OF LANDLORD.

To exempt landlord from damages to tenant resulting from defects in roof, and at same time hold tenant liable for full contract price, which he agreed to pay upon understanding that building was tenantable, would be unreasonable and obviously unjust to tenant, and such construction of lease should not be favored.

5. LANDLORD AND TENANT ⟲150(1) — REPAIRS.

If landlord was obligated to repair roof of building, such obligation was not discharged by unsuccessful efforts to remedy defects, under plea that such efforts constituted reasonable diligence to accomplish purpose.

6. LANDLORD AND TENANT ⟲231(2)—REPAIRS—NOTICE TO LANDLORD—EVIDENCE.

In action against tenant under lease for rent, tenant having vacated because of defects in roof, it was proper to admit in evidence written notices of defects in roof, sent to landlord after execution of lease, while tenant was holding under prior lease.

7. TRIAL ⟲352(4)—SPECIAL ISSUES—EVIDENCE—ACTION FOR RENT.

In action under lease for rent, tenant having vacated by reason of leaks in roof, court properly refused to submit to jury question whether

leak was caused by downspouts being stopped by refuse thrown on roof by persons in adjoining building, where no proof was offered to show that it was impracticable to avoid such stopping of downspouts by use of some character of screen upon roof.

**8. TRIAL ⊕⌐352(4)—SPECIAL ISSUES—EVIDENCE—ACTION FOR RENT.**

In action under lease for rent, tenant having vacated by reason of plaintiff's failure or inability to stop leaks in roof, court properly refused to submit issue whether or not holes made by sign braces erected by tenant caused roof to leak, where evidence that plaintiff had stopped all leaks caused by braces was uncontroverted.

**9. TRIAL ⊕⌐351(2)—SPECIAL ISSUES—ERRONEOUS REQUESTS.**

A requested special issue embracing question not applicable to evidence is properly refused as a whole.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by J. C. Ingram against A. Fred. Judgment for defendant, and plaintiff appeals. Affirmed.

Samuels & Brown, of Ft. Worth, for appellant.

McLean, Scott & McLean and Marvin H. Brown, all of Ft. Worth, for appellee.

DUNKLIN, J.   J. C. Ingram, plaintiff in the trial court, has appealed from a judgment denying him a recovery against A. Fred, the defendant, upon a demand for rents claimed to be due on a storehouse in the city of Ft. Worth, owned by Ingram and leased to Fred for a period of two years.

The lease was in writing, and the rental period stipulated therein was from June 5, 1914, to June 5, 1916, and the price to be paid by the defendant, stipulated in the lease, was $4,800 for the full rental period, payable in equal monthly installments of $200. The defendant, who was pursuing the business of pawnbroker and dealer in clothing, occupied the building for the first year covered by the lease and paid all rents accruing during that period.  He then vacated the premises and refused to pay rentals for the second year upon the plea, which was urged as a defense to plaintiff's suit, that by reason of the leaky condition of the roof the building was rendered untenantable and that plaintiff had failed to remedy that condition after due notice thereof from the defendant.

In answer to special issues, the jury found that during the first year of the lease term, and before defendant vacated the premises, the roof of the building leaked from rainfall to such an extent as to render the building untenantable for defendant's business; that defendant gave plaintiff notice in writing of such condition of the roof, and allowed him a reasonable time after such notice and before vacating the building within which to repair the roof, and finally moved out of the building solely by reason of its leaky condition.

Following the clause demising the premises to defendant for the specific use already stated, the lease contains the following provisions:

"To have and to hold the same, with the appurtenances, unto the said parties of the second part, from the 5th day of June, 1914, for and during the term of two years next ensuing and fully to be completed and ended on the 4th day of June, 1916, and said lessees yielding and paying therefor the sum of forty-eight hundred dollars ($4,800.00), as hereinafter provided.  It is hereby understood and agreed, in case building shall be destroyed by fire or other causes, or rendered untenantable, after June 5, 1914, it shall at lessor's option terminate this lease. * * *

"In case building shall from any cause leak, lessee shall notify lessor of same in writing, and he shall have reasonable time to repair same, and shall not be liable for damages accruing therefrom. * * *

"And the said lessees covenant and agree with said lessor as follows, that is to say: That they (said lessees) will pay said rent, to wit, the sum of forty-eight hundred dollars, in equal monthly installments, to wit, the sum of $200 on the 5th day of June, 1914, and the same amount on the 5th day of each and every month thereafter, until the whole sum of $4,800 shall have been fully paid, unless said premises shall be destroyed or rendered untenantable by fire, or unavoidable accident, without fault or default on part of said lessees, in which event only a ratable proportion of said rent shall be paid by said lessees, that they will not do or suffer any waste therein. * * *

"In case of loss or damage by storms, wind, fire, or lightning, or from any other cause, or from burglary, theft, or from breaking of water, gas, or sewer pipes, or loss caused by negligence, theft, or carelessness of other occupants or of employés of lessees, no liability therefor is assumed by lessor, and lessees expressly agree not to hold lessor responsible for any loss or damage that may occur by reason thereof."

The principal contention urged in appellant's brief is that, notwithstanding the facts found by the jury, defendant was legally bound to pay the full sum of $4,800, because the lease, which was in writing and unambiguous, expressly stipulated for the payment of the full sum of $4,800 for the entire lease term, and for an exemption of liability of the lessor for damages resulting from a leaky condition of the roof, and contained no provision expressly giving to the tenant the right to vacate the building and cease paying rents if it should become in such condition as to render it untenantable.  In 16 R. C. L., bottom page 698, section 187, the following is said:

"A cardinal principle in the construction of leases is, as in case of other contracts, to give

effect to the intention of the parties, and in arriving at the intention, the subject-matter, the situation of the parties, and the object had in view and intended to be accomplished by the parties at the time are to be regarded. * * * A construction should be avoided, if it can be done consistently with the tenor of the agreement, which would be unreasonable or unequal; and that construction which is most obviously just is to be favored as most in accordance with the presumed intention of the parties."

The language last quoted was taken from the opinion of our Supreme Court in Howeth v. Anderson, 25 Tex. 557, 78 Am. Dec. 538. Again on bottom page 699, section 188, of the same volume of Ruling Case Law, the following is said:

"The general rule that in the construction of a deed the grantee is to be favored in case of ambiguity applies to leases. Thus in construing provisions of a lease, relating to renewals, if there is any uncertainty, the tenant is favored, and not the landlord, because the latter, having the power to stipulate in his own favor, has neglected to do so, and also upon the principle that every man's grant is to be taken most strongly against himself."

And in section 178, bottom page 691 of the same volume, occurs the following:

"And it has been said that the English authorities, ancient and modern, are conclusive that, even where the landlord is bound by custom or express contract to repair, and by his failure to do so the premises become uninhabitable, or unfit for the purposes for which they were leased, the tenant has no right to quit the premises or to refuse to pay rent according to his covenant, but his only remedy is by action for damages. Where, however, a landlord has covenanted or is under obligation to repair, and by reason of his failure to do so the premises have become untenantable, this may, it seems, according to the better rule in this country, constitute a constructive eviction justifying the tenant in abandoning the premises."

See, also, sections 177 and 179, bottom pages 691 and 692, same work; Lunn v. Gage, 37 Ill. 19, 87 Am. Dec. 233; Tedstrom v. Puddephatt, 99 Ark. 193, 137 S. W. 816, Ann. Cas. 1913A, 1092.

In Berman v. Shelby, decided by the Supreme Court of Arkansas, reported in 93 Ark. 472, 125 S. W. 124, it was held that a landlord, who had made a covenant with the tenant to put a water heater in the bathroom, could not collect rents from the tenant after the latter had abandoned the premises by reason of the failure of the landlord to install the water heater. The doctrine upon which that decision was rendered was expressed in another decision by the same court in M. P. Ry. Co. v. Yarnell, 65 Ark. 320, 46 S. W. 943, from which latter decision the following was quoted with approval:

"The obligations of the contract were mutual, and, if the appellee failed to comply with it, he could not hold the appellant to a compliance. This is too plain to require argument or au-

thorities. The failure of one party to a contract to comply with its terms releases the other party from compliance with it."

[1, 2] Numerous other decisions which might be cited announce the same rule of mutuality of covenants between landlord and tenant. In Vincent v. Central City Loan & Investment Co., 45 Tex. Civ. App. 36, 99 S. W. 428, by the Court of Civil Appeals of the Third district, it was held that the failure of the landlord to make repairs on a building in accordance with his agreement so to do was sufficient cause for abandonment of the building by the tenant, and was a valid defense to an action for the rent accruing after such abandonment. We have been cited to no Texas authorities, and have found none, announcing a contrary rule in this state, and the rule so announced in the decision last noted seems to be in accord with the clear weight of authorities in this country, as stated in the quotation above made from Ruling Case Law, and we think it is supported by more equitable reasons, although some of the American decisions seem to have followed the English rule stated above. The decisions of the English courts are not conclusive proof of what the common law of England really is, although they are entitled to great weight. And the decisions of the different states of the Union, which, like our own, have adopted the common law of England, may be looked to to determine all such questions. 12 Corpus Juris, pp. 198, 199; Grigsby v. Reib, 105 Tex. 600, 601, 153 S. W. 1124, L. R. A. 1915E, 1, Ann. Cas. 1915C, 1011; Palacios v. Corbett, 172 S. W. 777. But if there be any principle of public policy prevailing in England, which would exempt a lease contract from the operation of the general rule of mutuality of covenants applicable in the construction of other contracts and stated by the Supreme Court of Arkansas, in the quotation above, the same does not obtain in this state. On the contrary, such an exception in favor of a landlord and against the tenant, which, so far as we can perceive, is purely arbitrary and without any reasonable or equitable basis, is incompatible with the spirit and genius of our institutions, and should not be allowed. Davis v. Davis, 70 Tex, 124, 7 S. W. 826; Swayne v. Lone Acre Oil Co., 98 Tex. 605, 86 S. W. 740, 69 L. R. A. 986, 8 Ann. Cas. 1117; Grigsby v. Reib, 105 Tex. 601, 153 S. W. 1124, L. R. A. 1915E, 1, Ann. Cas. 1915C, 1011; 12 Corpus Juris, 188, 189; 5 Ruling Case Law, pp. 911, 912.

[3, 4] While the lease contract in the present suit did not expressly and specifically bind the landlord to repair the roof, in case it should become so leaky as to render the building untenantable, yet we think that such obligation was clearly implied from the terms of the lease itself. The obligation of the tenant expressed in the lease to notify the lessor

if the building should leak, and the further stipulation that the lessor "shall have reasonable time to repair the same," clearly imports an understanding between the parties to the instrument that the lessor would make such repairs upon receiving such notice. In the absence of such an understanding, that clause in the lease would be entirely useless. Furthermore, to exempt the landlord from damages to the tenant resulting from defects in the roof, for which he would be liable under the common-law rule, in the absence of a stipulation to the contrary, and at the same time to hold the tenant liable for the full contract price of the lease, which he agreed to pay upon the understanding that the building was tenantable, would be unreasonable and obviously unjust to the tenant upon the plainest principles of equity, and such a construction therefore should not be favored.

[5] And if the landlord was obligated to so repair the roof of the building that obligation was not discharged by the efforts he made to remedy the defects, upon his further plea that such efforts constituted reasonable diligence to accomplish that purpose.

[6] The lease was dated March 28, 1914, although it did not begin to run until June 5th, following that date. Complaint is made of the admission in evidence of two written notices, one dated April 1, 1914, and the other May 12, 1914, to the landlord from the tenant, calling attention to the leaky condition of the roof and of damage done to the tenant's goods by reason of leaks from rains, while he was holding under a prior lease. One of the grounds of objection to that evidence was that the notices were given prior to the beginning of the lease term. We think there was no merit in this objection. At all events, the landlord treated the notices, and other notices given orally, as a compliance with the requirement of the lease, by making repeated efforts to repair the roof. Appellant requested the submission of the following special issue to the jury, which was refused by the court, and the refusal of the same is assigned as error:

"If you find from the testimony that water from rains entered the brick building at 1107 Main street, in the city of Ft. Worth, in the main room and show window, in such quantities as to render it untenantable as a clothing and pawnbroker's store, between June 5, 1914, and July 5, 1915, was the entrance of said water into the building and show window caused by the downspouts being stopped up and holes caused by the bracing of defendant's sign?"

[7-9] In support of the assignment appellant has cited the testimony of his witness Lydick, whom he employed on repeated occasions to repair the roof after appellee had complained of its leaky condition. According to the testimony of that witness, the leaks were caused by the downspouts leading from the roof becoming stopped up with rubbish thrown upon the roof by occupants of an adjoining building. He further testified that the building occupied by the defendant was a one-story building, while the adjoining building was a two-story building; but no proof was offered to show that it was impracticable to avoid such stopping of the downspout by the use of some character of screen upon the roof, which would prevent the rubbish from being washed into the downspout. Furthermore, according to testimony introduced by plaintiff himself, which was uncontradicted, there were never any appreciable leaks through the holes in the wall caused by the bracing of the defendant's sign, and such leaks as were so caused entirely ceased after the holes were closed by appellant. Under such circumstances it would have been error to submit to the jury the issue whether or not the leaks in the building rendering it untenantable were caused by the bracing of defendant's sign. And with that vice in the requested issue no reversible error was committed in the court's refusal to give it, even though it could be said that the question whether or not the leaks were caused by the downspouts being stopped up should have been submitted.

For the reasons indicated, all of appellant's assignments of error are overruled, and the judgment is affirmed.

---

&#x25CD;&#x2192;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes