MADISON-SMITH CADILLAC COMPANY *v.* SHAUMAN.

4-4107

Opinion delivered January 27, 1936.

*Owens & Ehrman,* for appellants.

*R. E. Wiley,* for appellee.

BAKER, J.   This case is unusual in many aspects. The appellee bought from Madison-Smith Cadillac Company, in Little Rock, a LaSalle sedan automobile, and paid therefor $3,055.   This was on September 29, 1928.   He alleged in his complaint that the steering mechanism upon this car was in bad condition from the time of the purchase until May 3, 1930, when the car was wrecked, said wreck having been caused by the defective steering gear.   During the period prior to the wreck the car had been returned to the repair shops of the Madison-Smith Cadillac Company on several occasions, but repairs were never successful.   The appellee made claims for damages, including doctor's bills and other expenses for injuries suffered by the wife of the appellee at the time of the wreck.

After the said wreck, when the LaSalle automobile was returned to the shop of the appellant for repairs, the estimated cost of such repairs was something above $400.   Shauman did not want to pay this price and did not authorize the repairs to be made.   A few days later he made a proposition in writing to the Madison-Smith Cadillac Company.   His letter, dated June 4, 1930, is as follows:

"Madison-Smith Cadillac Co.,

"Little Rock, Arkansas.

"Attention Mr. Madison.

"Dear Mr. Madison:

"Concerning our conversation regarding the trade of my LaSalle sedan, I hereby confirm your proposition: You to take my car in trade for the Cadillac Fleetwood that you are now driving this coming September and I

to pay you a difference of $2,600. Your car to be in as good condition as of this date, natural wear excepted. You are to have immediate possession of my car to repair and sell and you to deliver your car at a date agreed upon in September. I furthermore state that my car is free from all indebtedness and no liens against same.

"Thanking you very kindly for your consideration in this matter, I am,

"Very truly yours,

[Signed] "Harry E. Shauman."

The answer to this letter was by Mr. Madison, individually, and is as follows:

"Little Rock, Ark.,
"June 7, 1930.

"Mr. H. E. Shauman,
"N. O. Nelson Mfg. Co.,
"Little Rock, Arkansas.
"Dear Mr. Shauman:

"I am in receipt of your letter of the 4th confirming purchase of my Fleetwood Cadillac Sedanette, as follows: I to take delivery of your LaSalle at once, and to deliver to you my car in September, 1930. You to pay me a difference of $2,600. I am to deliver you my car at that time in same condition as of this date, with the exception of natural wear on average mileage in the meantime.

"Yours very truly,
"A. F. Madison (Signed)
"A. F. Madison.

"P. S. Might advise that I am just advised by Cadillac Motor Car Company that they are shipping me the new improved radio which I will install on this car upon receipt."

One of the controversies in this suit is that the Madison Cadillac Company, formerly Madison-Smith Cadillac Company, was not a party to the contract as evidenced by these letters, but that the contract was one between Mr. Shauman and Mr. Madison only; that Mr. Madison, as an individual, accepted the offer of Mr. Shau-

man, and became bound thereby to the exclusion of the corporation.

The view we have of this suit, however, makes it immaterial whether the suit should have been against the corporation or the individual.

This was an exchange or barter of one automobile for another, the difference in values being evidenced by the agreed consideration of $2,600, to be paid by Shauman at the time he was to take over the Fleetwood Cadillac car in September. There was no agreement about the value of either one of the cars set out in this contract. There was, however, an agreement to the effect that the Fleetwood car was worth $2,600 more than the LaSalle car. That is certain and definite.

Upon the trial of the cause the suit proceeded upon a theory that the appellee was the purchaser of the Fleetwood car; that he was paying therefor by the delivery of the LaSalle car and by the settlement of the claim he alleged he had against the defendants for $600 for damages and by the further payment of $2,600, to be made in September.

In the development of the case no effort was attempted as an explanation of the alleged damage claim, except that Shauman makes it clear he intended a settlement of the matter in the contract. If so, it was an unnoted consideration.

In September Shauman says that his financial condition and status had changed, and that he was unwilling to proceed with his contract and pay the $2,600 according to agreement and to accept delivery of the Fleetwood Cadillac car. This is the only reason given for the failure to perform the contract. The Fleetwood Cadillac car was ready for delivery, and the evidence is undisputed that Mr. Madison called Shauman on two or three occasions desiring to make delivery, which was refused; that Mr. Galloway, a salesman of the Madison-Cadillac Company approached Mr. Shauman on one or two occasions in an effort to deliver. Shauman refused and would not pay the $2,600. The car was kept for him until January 22, 1931. At that time the Fleetwood Cadillac car was sold or traded for $950 in cash and two Buick cars.

There was realized from the two Buick cars $940, making a total received for the Fleetwood car of $1,890. Prior to this time the LaSalle car had been repaired and was sold for $1,141. $417.39 had been spent in repairs on the LaSalle car, so the net amount received for it was $723.61, which, added to the $1,890, for which the Fleetwood car was sold, made a total of $2,613.61 that was received for the Fleetwood Cadillac car.

On April 11, 1932, Mr. Shauman wrote Mr. Madison a letter calling attention to a letter written on a previous date, April 2d, in regard to the credits for the LaSalle car. In response to this letter, by Mr. Shauman, on April 11, Mr. Madison, answering, called attention to Shauman's letter of June 4, 1930, the contract letter, and also called attention to the fact that the trade was made between the two parties as individuals. He further said: "The writer held the car for you until the specified time and then held it some little time longer, trying to give you a chance to carry out the agreement." "The writer lost considerable more money by holding the car than he realized out of the wrecked car which you turned in."

These two letters show the attitude of the parties at that time.

Shauman thought that he was losing too much, although he had breached the contract himself, and, accordingly he filed suit, as he contends, not on account of his breach of the contract, but to protect himself against the extreme penalty or losses which he says he suffered by reason of the fact that the appellants had refused to account to him for any part of the contract price that he had paid by trade of the LaSalle car and settlement of his controversy for damages on account of injuries alleged to have been suffered. He had settled his claim for damages, and delivered his LaSalle sedan, but had nothing in return.

The theory of the defense is that, after the appellee had breached the contract, he was the author of his own misfortunes and was not entitled to any accounting for any part of the consideration paid or traded on the purchase of the car he refused to accept.

Conflicting evidence was offered tending to show the market value of the two cars, the Fleetwood Cadillac and the LaSalle, at and prior to the time of the breach of the contract, and also some evidence was offered tending to show the market value of the Fleetwood car at the time it was sold. Among other items of proof in regard to the value of the Fleetwood-Cadillac car, the fact was developed that, after it had been kept in the hope of delivery to Shauman, a new model had been put upon the market, which rendered the Fleetwood car an out-of-date model and very materially reduced in market value.

Shauman contends that upon his breach or failure to accept the Fleetwood Cadillac car, the defendants, after notice to him, should have advertised or sold the car at public sale and accounted to him for the purchase price thereof; that, failing to do so, they must account to him for the market value at the time of the breach, and he argues that the jury, upon the trial of this case, must have found the market value to be at least $3,100, from which, he argues, was subtracted the amount of his debt or obligation, $2,600, leaving a verdict of $500, the amount for which judgment was rendered in his favor.

This argument, made to sustain this verdict, is extremely adroit, but not convincing. On account of contradictory instructions, submitting this case to the jury, the verdict is not conclusive as a finding of any facts. To determine the rights of the parties in this controversy, we attempt an analysis of the material part of the record before us.

If we treat the subject of this controversy, as the parties did upon the trial, as a contract for the sale of the Fleetwood Cadillac car to Shauman, for the delivery of the LaSalle car, and payment of the $2,600, it is necessary that we discuss the written contract between the parties. This contract was not an executed contract. Shauman did not have title or possession actually or constructively. The LaSalle car and the settlement of Shauman's claim for damages, for some undetermined amount, was a "down payment." There was a balance owing of

$2,600. This was to be paid in September, then only was delivery contemplated. So the contract was executory. See distinction between executed and executory contracts. 13 C. J., p. 245, § 11; 6 R. C. L., p. 590.

Shauman, in his letter, the contract, to the defendants, refers to the Fleetwood car as "your car," possession of which defendants were entitled to have until he had performed the contract upon his part by the payment of $2,600. There was never a time from the date that letter was written and offer accepted until the present time that Shauman could have rightfully gotten possession of that car, except by full compliance of his agreement to pay the $2,600. The defendants were not mere bailees, or trustees, nor did they occupy the relative position of a mortgagee in possession. Whether the breach arose out of a wilful refusal to perform or actual inability, can make no difference. No enlarged rights or remedies arise because misfortune had overtaken him. He admits his breach; also that defendants were not in default. Plaintiff therefore cannot maintain his suit. *Harris Lumber Company* v. *Wheeler Lumber Co.*, 88 Ark. 491, 115 S. W. 168; *Berman* v. *Shelby*, 93 Ark. 472, 125 S. W. 124; *Mo. Pac. Ry. Co.* v. *Yarnell*, 65 Ark. 320, 46 S. W. 943; *Kirchman* v. *Tuffli Bros. Pig Iron & Coke Co.*, 92 Ark. 111, 122 S. W. 239.

Since there was no delivery of the Fleetwood car, plaintiff did not have any property therein; so long as the contract was executory, his property lay in the contract. Its validity or enforceability was not questioned.

The court erred in refusing to direct a verdict for defendants. Judgment is reversed, and cause dismissed.