I. RICHKER et ux., Appellants,

v.

A. GEORGANDIS, Appellee.

No. 13171.

Court of Civil Appeals of Texas.

Houston.

April 2, 1959.

Rehearing Denied April 23, 1959.

Al L. Crystal, Houston, for appellants.

James N. Adams, Houston, for appellee.

BELL, Chief Justice.

Appellee was the tenant of appellants in the premises located at 302–304 Fannin Street in Houston where he operated a restaurant. The original lease was for a five year term with an option to renew for five years, the option to be exercised six months prior to the expiration of the original term. In July of 1954 the option to renew was exercised.

Appellee on April 5, 1955, filed suit against appellants, alleging that appellants had breached the implied covenant of peaceable and quiet enjoyment. The acts which were alleged to constitute the breach were that during September 1954 appellants and those acting under them erected a barricade in front of the cafe operated by appellee in connection with remodeling work to be done on the Fannin Building, of which appellee's premises were a part; that the barricade severely impaired the view of appellee's place of business from the public, and that it interfered with the safety of those entering the cafe and interfered with the accessibility of the premises. Too, it was alleged that appellants and those acting for them utilized the space in front of the cafe to dump and dispose of trash and other materials which caused the cafe to become polluted with dust. Further, it was alleged that severe noise and disturbance were created; that the electric current serving the place was intermittently interrupted and that the sign in front of the cafe was removed. Appellee alleged that he had sought to obtain relief by communicating with appellants, but appellants had failed and refused to do anything to abate or minimize the conditions.

Further, it is alleged that instead of taking any steps that would grant relief to appellee, appellants told appellee he could move out. By virtue of these acts, it is alleged that appellants intended to deliberately destroy appellee's business.

Appellee prayed that his rents be abated from September 1954 until such time as the breach of his covenant should cease. He further alleged damages for lost profits in the amount of $20,000. He further prayed for injunctive relief.

Appellants answered, denying all allegations and pleading affirmatively that by paragraph 3 of the lease appellee agreed to save appellants harmless from any and all damages however such damages should be caused.

The case was tried to a jury and the following issues were submitted and the following answers were given to the issues:

1. Do you find from a preponderance of the evidence that the barricade in question constituted an unreasonable obstruction of plaintiff's place of business?

Answer: We do.

2. Do you find from a preponderance of the evidence that the premises in question were rendered unusable for the purpose for which they were leased by the erection of the barricade in question?

Answer: We do.

3. Do you find from a preponderance of the evidence that plaintiff was materially damaged by the erection of said barricade?

Answer: We do.

4. From a preponderance of the evidence what sum of money, if any, do you find would reasonably compensate plaintiff for such damages, if any, suffered by him as a direct and proximate result of the erection of said barricade?

Answer: $15,000.

Judgment was rendered on the verdict in favor of appellee.

Appellants seek reversal of the judgment on the following grounds:

1. The appellee, as a matter of law, is not entitled to recover against appellants because under paragraph 3 of the lease appellee agrees appellants shall not be liable for any damage suffered by appellee. Paragraph 3 reads as follows:

"Lessor shall not be liable for any damages, loss or injury to the person or property or effects of lessee or any other person or persons whomsoever suffered on, in or about the said premises or upon the streets or sidewalks in front of or adjoining same by reason of water, leakages or present, future or latent or other defects or weaknesses in the form, character or condition of the said premises or any part or portion of same or from any other source or cause whatsoever or for any repair or other work done upon said premises or any part of the same or from any negligence of lessee or lessee's servants, agents, employees or contractor, and lessee agrees to indemnify protect and save harmless lessor against any and all such damages or things."

2. There is no evidence in the record showing an actual or constructive eviction, as a matter of law, and no jury finding of an eviction or the elements thereof, so there is no showing or finding of the breach of the covenant for peaceful and quiet enjoyment.

3. There is no evidence of negligence in the erection or maintenance of the barricade and as a matter of law, therefore, appellee failed to prove a breach of the covenant of peaceful and quiet enjoyment, but even if there is evidence of negligence there is no jury finding of negligence so no judgment could be predicated on negligence.

4. The Court erred in refusing to submit their requested special issue reading as follows:

"Do you find from a preponderance of the evidence that the plaintiff was exposed to any greater damage by reason of the erection or maintenance of the barricade any more so than any of the other tenants on the ground floor of the building?"

5. The Trial Court erred in admitting in evidence, over appellants' objection, testimony of appellee as to the amount of his investment in the leased premises.

6. The Court erred in submitting the issue on damages as there was no sufficient or competent proof upon which a jury could base a finding for lost profits, and any finding would be conjectural and speculative.

7. There was error in the action of the Trial Court in overruling appellants' motion for new trial because of jury misconduct, the misconduct consisting in the receipt by the jury of evidence not in the record but given by one of the jurors in the jury room.

Appellee presents here two theories of liability. His first theory is that the acts of the appellants constituted such a disturbance of his use and enjoyment of the premises that his business was destroyed and he had to move and that these acts constituted a breach of the implied covenant for peaceful and quiet enjoyment of the premises. His second theory of liability is that independent of any such covenant, appellants' conduct was tortious and his business having been destroyed he is entitled to recover his damage, they being his lost profits.

We must review the testimony. We might say in this connection that it is not possible for us to accurately portray the barricade complained of because much of the description given by the witness was in connection with a drawing that we have not been furnished, and various pictures of the barricade were introduced in evidence but they have not been furnished us. They

were, however, all before the jury and in answering the issues submitted the jury had benefit of them. The following is the substance of the testimony given by appellee:

The Fannin Building is located in the 300 block of Fannin Street, being on the west side of Fannin Street across from the Harris County Civil Courts Building. Its northeast corner is a point about 25 feet from the interesection of Fannin and Congress Streets. It runs along Fannin Street south to a point about 50 feet north of Preston Street. The space occupied by appellee was about 22 feet across, fronting on the sidewalk. It was the 22 feet at the north end of the building. The sidewalk in front of the building was about 6 feet wide. Appellants' space was about 25 feet from the main entrance to the building. Appellee had a sign reading "Savoy Cafe" on the building above his entrance and extending partially over the sidewalk. This advertised appellee's place of business. Appellee denies he was ever notified that remodeling of the building was going to occur. The work started the last part of August, 1954. In August 1954 appellants or the contractor for them took down the sign without asking him about it. Then the barricade was erected the entire length of the building from a point two feet from the north end to the south end. It ran across the sidewalk and about two feet into the street. The barricade was about 36 inches wide on the sidewalk. Passage was cut down by one-half. There is then this question: "Now all of this area in here was blocked to the public?" The answer was: "Yes sir." (This will illustrate the difficulty encountered when we are called on to review the facts. We cannot ascertain what area was referred to.) The barricade was tall enough to allow a six-foot tall man to walk through. Then, in the testimony there is this question: "Does this fairly represent the area that was blocked?" The answer was: "Yes, sir." (Again, we cannot ascertain what area was referred to.) There was an entrance to allow the public to enter the 36–inch area. Materials were stored in the barricade, i. e. lumber, lime "an all that." The workmen used wheelbarrows and trucks to go inside the barricade. This all prevented the public from going through the barricade. In the barricade were stored trash and building material. There was noise from air compressors and trucks. Dust in great quantities came into the place. On October 25, 1954, appellee wrote appellants a letter complaining about the barricade and the effect it was having on his business. He asked for some adjustment while construction was going on. This letter went unanswered. He continued to complain to appellants or the building manager, but nothing was done. On December 1, 1954, appellee wrote a letter to appellants complaining that his electricity was cut off without notice, causing $63 of food to spoil. Too, one of the front windows was broken and appellee asked for some one to come down to give an estimate of the cost for the glass and lettering. Appellee had sent a check for rent, deducting the expense he had thus been caused. On December 29, he received a letter from counsel for appellants threatening ouster should he not by January 5 pay the full amount of the monthly rental plus 10% interest and $25 attorney's fee. This appellee paid. Appellee remained in the premises until on May 14 he locked the door. He had everything physically removed by June 9. The public had difficulty passing through the small passageway. On one occasion a lady was hurt using the passageway so she had to go to the doctor. Appellee, during 1951–1952 made $7,000 to $8,000 a year net income. He paid income tax on that amount. In 1953 it dropped to about $5,000 due to general business conditions.

Winnie Howard, who was a waitress and manager of the cafe for appellee from 1950 to 1953, testified appellee had a good business. In 1953 she went to work for a loan company a few doors down from the cafe. She observed the operation of the cafe while the barricade was located in front of

it. She noticed that it definitely began to lose business though she, because of friendship, continued to patronize the place until it went out of business. There was a great deal of dust that came into the cafe. They had to cover things in the kitchen. The food itself had to be covered. The passageway was very narrow and it was rather cramped in there. There wasn't enough room for more than two people, and if there were a wheelbarrow and men carrying lumber or other things you had to step in a doorway and wait for them to pass. There was much noise from air compressors. They used the sidewalk for storage. When she went to the cafe, she walked on the sidewalk between the barricade and the building.

The witness for appellants was the manager of the Fannin Building. Insofar as is material to any question before us, he testified in substance the work was done by Bonderson Construction Company under contract made with appellants. He personally gave oral notice to appellee of the plan to remodel the building two months before work was to start. He told them there would be minor disturbances during the work. So far as he was concerned if the tenants didn't like the disturbances they could move out. He told all tenants their signs would be moved. He stated the electricity was off only 30 minutes. He didn't notify the tenants downstairs because there was merely a transfer from one switch to another and this would not affect them. On October 28, 1954, attorneys for appellee wrote appellants complaining that appellee was being damaged by being so enclosed by the barricade and because of the dumping of rubbish in front of his place of business. The witness said he replied to the letter "verbally." What the reply was is not shown.

Neither of appellants testified.

The effect of this tesimony is to show that the barricade erected shut off view of appellee's place of business. It also made access to the premises difficult though access was not entirely cut off. The use of the barricade was such that the difficulty of reaching appellee's place of business was greatly increased. Too, the barricade may have been a much greater interference than the transcribed evidence before us indicates, because the statement of facts shows there were before the jury a drawing or diagram of appellees place of business and various pictures taken of the barricade. Not having them before us, we cannot evaluate them.

We have concluded that there was evidence supporting the jury's findings, and that such findings of the jury, together with findings presumed to have been found by the court in a manner so as to support the judgment, support the judgment of the court. The facts show the breach of the implied covenant for peaceful and quiet enjoyment of the premises.

There is in every lease of land, in the absence of a provision to the contrary, an implied covenant in favor of the lessee that he will have peaceful and quiet enjoyment of the premises for the term of the lease. L-M-S, Inc. v. Blackwell, 149 Tex. 348, 233 S.W.2d 286; 27 Tex.Jur., p. 269; 51 C.J.S. Landlord and Tenant § 323a, p. 1005.

For there to be a breach of this covenant, there must be an eviction, actual or constructive, brought about by the acts of the landlord or those acting for him or with his permission. In the case of Stillman v. Youmans, Tex.Civ.App., 266 S.W.2d 913, no writ history, this Court set out the elements that must be shown in order to constitute a constructive eviction. These are: 1. An intention on the part of the landlord that the tenant shall no longer enjoy the premises, which intention may be inferred from the circumstances proven; 2. A material act by the landlord or those acting for him or with his permission that substantially interferes with the use and enjoyment of the premises for the purpose for which they are let; 3. The act must

permanently deprive the tenant of the use and enjoyment of the premises; and 4. The tenant must abandon the premises within a reasonable time after the commission of the act.

The jury, in this case, has found that the barricade which was erected by those acting for the appellants who were the landlords, constituted an unreasonable obstruction of appellee's place of business. The jury has found that the barricade rendered the premises unusable for the purpose for which they were leased. The jury also found appellee was materially damaged by the erection of the barricade. The effect of these findings is to establish a material act which substantially interfered with the use and enjoyment of the premises for the purpose for which they were let.

Appellants contend, however, that these findings cannot be the basis for a judgment based on breach of the implied covenant for peaceful and quiet enjoyment because they do not show a constructive eviction. While the verdict did not find all elements which must be present to constitute a constructive eviction, we find no objection to the Court's charge for failure to submit the other elements of the cause of action. Rule 279, Texas Rules of Civil Procedure, provides that where one or more elements of a cause of action are submitted to the jury and there is an omission to submit one or more of the elements of a cause of action, and there is no objection to such omission by the party against whom judgment is rendered, if the omitted issue is one relied on by the opposite party for recovery, a party may request the Court to make a finding on the omitted issue. If no such request is made, it will be presumed that the Trial Court found such issue in a manner so as to support the judgment, if there is evidence in the record to support such a presumed finding. Walker v. Texas Employer's Ins. Ass'n, 155 Tex. 617, 291 S.W.2d 298; Davis Motors, Dodge & Plymouth Co. v. Avett, Tex.Civ.App., 294 S.W.2d 882, no writ history

We think a presumed finding of the intention on the part of the landlord that the tenant should no longer occupy the premises finds support in the circumstances in evidence. Trash was stored in front of the place of business. There was much dust that filtered into the place, so much so that food had to be covered. There was the barricade itself. There was storing of material in the barricade. There was transportation of materials through the passage in the barricade so that one using the barricade had to step into a doorway to let the workmen transporting the material pass. A glass window was broken and appellants refused to allow cost of replacement to be deducted from the rent, and, in connection with appellee's efforts to deduct the cost, without communicating with appellee, turned the matter over to their attorney who insisted not only on the full payment of rent but 10% interest and $25 attorney's fees. Too, in October, 1954 appellee wrote appellants, complaining of conditions and asking for some adjustment during construction. Appellants made no reply and did nothing. Again in October, 1954 attorneys for appellee wrote appellants, complaining. Appellants made no reply, but their manager says he replied "verbally." What he replied is not shown. The manager, on the witness stand, said if the tenants did not like conditions during remodeling they could move out. Appellee testified he was told if he didn't like it he could move

A presumed finding of permanently depriving the appellee of the use and enjoyment of the premises finds support in the evidence. The evidence does not show just when the barricade was removed, but evidence does show it remained up something like nine months.

There is evidence to support the presumed finding of abandonment because of appellants' conduct. Appellee testified he locked the door to the cafe May 14, 1955, though physically he did not leave the premises until June 9. However, he left,

the best we can tell from the record, while the barricade was still up.

It is also contended that liability of the appellants is predicated on the theory of wrongful conduct of appellants, independent of the same conduct being a breach of an implied covenant. The appellants contend, however, that appellee's petition and the manner of submission of the case to the jury show his theory of recovery was that the specific conduct alleged constituted a breach of the implied covenant of peaceful and quiet enjoyment, and there is no pleading of any other theory.

■ We have studied appellee's petition with great care and have concluded that he pitched his cause of action only on a breach of the implied covenant for peaceful and quiet enjoyment. If tortious conduct independent of such covenant had been pled, we think the findings of the jury would sustain recovery because these findings convict appellants or those acting for them of erecting an unreasonable barricade that substantially interfered with the use and enjoyment of the premises. L-M-S, Inc. v. Blackwell, supra, and authorities there cited. However, appellee is confined to the theory pleaded by him. In paragraph III of his petition appellee alleged the lease and the implied covenant and the amounts he had invested in his business. In paragraph IV he alleged his compliance with the lease. In paragraph V he alleged the acts of appellants and specifically states *the acts constitute a breach of the implied covenant.* In paragraph VI he alleged the appellants knew of the foregoing acts; that appellee demanded abatement of the rents; that appellants refused to cease the interference or minimize it, but told appellee he could move out if he didn't like conditions. He then alleged it to be the deliberate purpose of appellants to destroy his business. Then he stated unless restrained from continuing the acts the business will be destroyed. In paragraph VII he alleged he is entitled to an abatement of the rents until the breach

of the covenant ceases. In paragraph VIII he pleads he is, in addition to the abatement of rents, entitled to recover lost profits and the damage to his business incurred "by virtue of the said breach of the covenant for quiet enjoyment in the sum of $20,000." The prayer is for injunctive relief, abatement of rents, for money damages and general relief.

We cannot escape the conclusion that the sole theory pleaded was that there had been a breach of the implied covenant.

Appellants complain that there was no evidence which would support a jury finding of negligence and therefore as a matter of law there was no breach of the covenant. Further, the issues submitted to the jury did not correctly submit negligence.

Appellee's cause of action was not based on negligence. It alleged intentional acts which were unreasonable and which substantially interfered with the use of the premises for which they were leased which brought about a constructive eviction.

■ Appellants complain of the refusal to submit their requested issue as to whether the barricade exposed appellee to any greater damage than other tenants on the ground floor of the building. There was no error in this. The question was as to whether the conduct was as to appellee unreasonable, resulting in loss to him. Appellants complain the Trial Court erred in admitting in evidence testimony by appellee as to the amount of his investment. The point of error does not assign any particular reason as to why it was inadmissible. It merely asserts that its admission was reasonably calculated to cause and probably caused the rendition of an improper judgment.

The record reflects that appellee and his father-in-law, when the business was bought, bought it as partners. Appellee was asked how much he himself spent. There is no specific objection to the question, but appellants' counsel stated, "If he

is going to testify from the records, I probably have, would have no objection, but I object to this." The witness answered $3,000. Then the witness was asked how much was spent on improvements. Objection was made to this as follows: "We object to any testimony unless he offers reasonable records upon which he is basing his testimony." The witness answered $16,000. Later appellee bought out his father-in-law. The bill of sale showing payment of $3,500 was introduced without objection.

Here in this appeal appellants assert for the first time that such testimony was not relevant to any issue. Their objection on trial was in effect that the records were the best evidence. The witness having personal knowledge of the cost, it was permissible for him to testify as to that. The objection made was not tenable. On appeal, appellants cannot successfully assert an objection not made in the Trial Court.

Appellants complain there was not sufficient evidence showing lost profits to authorize the submission of the damage issue to the jury and the jury answer of damages was necessarily conjectural and speculative.

The evidence shows appellee operated his cafe at the Fannin Street address beginning in 1950 and continuing until May, 1955. He testified that in 1951 and 1952 he earned a net income of $7,000 to $8,000, and in 1953 it dropped to about $5,000. He reported these amounts for income tax purposes. After the barricade was erected his business began to drop so that he began losing money and finally had to close the business because he exhausted what money he had.

The testimony showed appellee had an established business. Damages for lost profits can be recovered where there is damage to an established business. The profits the business has been making at a point not too remote are competent evidence of profits to be anticipated for a period not too remote. Southwest Battery Corporation v. Owen, 131 Tex. 423, 115 S.W.2d 1097. We think the evidence given is sufficient. The mere fact that profits may not be determined with exactness does not mean that an estimate of profits is conjectural and speculative.

We deem authorities cited by appellants factually different from the case before us.

The Trial Court did not err in overruling appellants' motion for new trial based on jury misconduct. There is no statement of facts showing what evidence the Court heard, if any. It does not appear that the jurors' affidavits attached to the motion for new trial were introduced in evidence. These affidavits, being merely attached to such motion do not constitute evidence. Denison v. Darden Lumber Co., Tex.Civ.App., 21 S.W.2d 574, no writ history.

Paragraph 3 of the lease is relied on by appellants as relieving them of damages. They say it is an agreement by appellee to relieve them of damage of any character suffered by appellee from any source whatsoever.

We cannot so construe this paragraph as relieving appellants from the consequences of their own intentional act that constitutes a breach of the implied covenant for peaceful and quiet enjoyment of the premises. In interpreting a lease, the same as any other written contract, the intention of the parties is to be determined. Ingram v. Fred, Tex.Civ.App., 210 S.W. 298, writ ref.; Joyner v. R. H. Dearing & Sons, Tex.Civ.App., 134 S.W.2d 757, error dism., cor. Judg.; Garcia v. King, 139 Tex. 578, 164 S.W.2d 509; 24 Tex.Jur., Sec. 13. Too, in ascertaining the intention of the parties, we should consider the subject matter of the contract and the surrounding circumstances at the time the lease was executed. Garcia v. King, supra.

Another rule of construction is that the lease will be construed most strongly against lessor. 24 Tex.Jur., Sec. 13, p. 59; Walling v. Christie & Hobby, Inc., Tex.Civ.App., 54 S.W.2d 186, no writ history.

Paragraph 3, to say the least, is not a model of clarity. The subject matter of the paragraph is the premises leased by appellee and the sidewalk and street in front of the premises. The exemption of lessor is from damages caused by water leakage or caused from defects or weaknesses in the form, character or condition of the premises. As a part of the same sentence and immediately following the catalogue of the types of cause is the general language "or from any cause or source whatsoever." Then follows exemption of the landlord from damages resulting from negligence of the lessee or his employees. It will be seen that the paragraph is dealing with the premises leased and the sidewalk and street in front of it, the use of which goes with the premises. The causes enumerated are of a class that as a matter of common knowledge occur without any affirmative act by the landlord, or, for that matter, of any one else. The use of the general term is to be construed as encompassing only the same type of class of causes specifically enumerated.

In the causes enumerated there is no affirmative or intentional act of the landlord stated. We think construing the whole paragraph the parties intended that when possession was delivered, the landlord would be understood as turning the premises over as they were and would not be liable for anything that might occur on the premises or its appurtenances through inaction on the part of the landlord.

The only real right a tenant obtains under a lease is the right to use and enjoy the premises for the purpose for which they are let. That is the real reason for the implication of the covenant for peaceful and quiet enjoyment. To give the paragraph the construction asked by ap-

pellants would effectively countermand the real thing that is otherwise obtained by the lessee. It would, as stated by this Court in Walling v. Christie & Hobby, Inc., supra, be construing the lease most favorably to the lessor when the rule is the reverse.

The appellee here signed a five year lease with an option to renew for a five year period, for the purpose of operating a cafe for profit. This he certainly could not do if the lessor could with impunity breach the implied covenant for peaceful and quiet enjoyment by his own intentional act. We are unwilling to ascribe any such intention to the parties in the absence of a clear and unequivocal provision in the lease abrogating the covenant.

We have read all the cases cited by each party on this point and find them not controlling and really of no particular help. The provisions in the leases construed in the cited cases materially differ from paragraph 3 of the lease in this case.

The judgment of the Trial Court is affirmed.