**MAGNOLIA PETROLEUM CO. et al.**
**v. STORM et ux.**

No. 4765.

Court of Civil Appeals of Texas.
El Paso.

Nov. 29, 1950.

Rehearing Denied March 1, 1951.

Perkins, Floyd & Davis, Alice, Seeligson, Cox, Patterson & Grant, San Antonio, Walace Hawkins, Earl A. Brown and R. T. Wilkinson, Jr., all of Dallas, for appellants.

McCampbell, Wood & Kirkham, Dean B. Kirkham and Raph R. Wood, all of Corpus Christi, for appellees.

SUTTON, Justice.

This appeal is from the 117th District Court of Nueces County. The suit was in form trespass to try title but had for its purpose and object the cancellation and removal as cloud an oil and gas lease on 80 acres of land situated in Jim Wells County fully described in the pleadings. The trial was to the Court and judgment for the plaintiffs, Wash Storm and his wife, from which the defendants have appealed. On the merits there is but one point, but the defendants on appeal raise for the first time a question of jurisdiction based on the

proposition there are absent necessary and indispensable parties. The facts are not in dispute.

Arthur A. Seeligson and others as owners of 20,887.4 acres of land fully described on May 5, 1923 entered into an oil and gas lease with one T. B. Slick. The 80 acres involved in this suit is a part of such lands. The lease is, in the usual form of a Texas standard commercial oil and gas lease. It was for a primary term of ten years and so long thereafter as oil and gas or either of them is produced from said lands. It is provided in said lease if no well be commenced on said lands within one year from the date thereof the lessee shall pay to the lessors the lump sum of $2088.74 which shall operate as a rental and defer the commencement of a well for an additional twelve months, and in like manner upon the payment of a like sum the commencement of a well may be deferred for a like period of months successively. The lease further provided if the first well drilled be a dry hole, then if a second well be not commenced within twelve months from the expiration of the last rental period for which rental had been paid the lease should terminate unless the payment of rentals be resumed on or before such date.

In 1926, and before the conveyance of the 80 acres now owned by Storm, the lessors and owners of the lands described in the lease conveyed to the National Oil Royalty Company an undivided one-sixteenth ($\frac{1}{16}$) royalty interest in and to the oil, gas, sulphur and other minerals in and under said lands. By the terms of the conveyance the royalty interest was a non-participating royalty, which is not disputed. It was stipulated on the trial the royalty interest conveyed is now owned by certain named individuals. The royalty deed or conveyance recited the existence of the Slick lease and that the conveyance was made subject to it, as it had to be, but covered and included one-half of all the oil royalty and gas rental or royalty due and to be paid under the terms of the lease.

On January 1, 1931, the lessors and owners of the lands sold and conveyed the 80 acres owned by Storm to R. C. Giberson, who sold the same to Storm July 20, 1931.

We think the non-participating royalty owners are not necessary and indispensable parties to the suit, because as such their right was only to receive their royalty when and if produced. By the terms of the royalty conveyance the owners had the exclusive right to make a new lease without the joinder or consent of the royalty owners, and such royalty owners were not entitled, under the terms of the conveyance, to receive any part of the bonus or rentals. Their right or rights was limited to the receipt of the one-sixteenth royalty. Prior to the trial of this suit the royalty owners had received and were receiving their royalty from the wells drilled on the lands, including three wells located on the 80-acre tract. They had nothing to do with the making of a lease nor the continuation thereof. If the lease be valid they were entitled to receive their royalty. If it be invalid they had no right to its perpetuation. The suit here is not materially different from one to recover the leasehold estate. It has been held the owner of the royalty is not a necessary party to a suit to recover the leasehold estate. Petroleum Producers Co. v. Reed, 135 Tex. 386, 144 S.W.2d 540(T).

The second point is the defendants, owners of the Slick lease, are vested with a valid title to the oil and gas leasehold estate in the lands sued for which lease is in full force and effect and the trial court erred in rendering judgment for the plaintiffs on the issue of title.

It becomes necessary to make a further statement of the record evidence in supplement of what has already been stated. Before the expiration of the primary term of the Slick lease on March 31, 1933, a producing well was brought in on the lands leased. On June 30, 1933, the original lessors and the owners of the oil and gas lease entered into a written agreement wherein it was recited there had been completed a producing well on the leased premises capable of producing and which was then producing oil; that it had been determined by the parties that it was not to

the best interest of the parties that further development for oil and gas or operations to produce the same be carried on under the then existing economic conditions. The parties then agreed the well was a producer and then producing within the terms of said lease and that by reason thereof the lease had been validated and perpetuated in accordance with its terms and was then in full force and effect. It was further agreed in consideration of the sum of $20,887.40 to be paid one-half in cash and one-half from oil to thereafter be produced from said lands the lessees should be under no obligation either to drill additional wells, or to produce the present well on said lands or any other additional wells which might be drilled by them on said premises for a period of one year from May 5, 1933. The plaintiffs, Wash Storm and wife, by a separate instrument dated September 16, 1933, fully ratified and confirmed said contract as to the 80-acre tract owned by them.

On December 28, 1935, the original lessors and the owners of the lease under Slick entered into another written agreement wherein in "whereas" provisions the original lease is referred to and the lands described as in the original lease; the agreement of June 30, 1933, and the terms thereof, and that a question had arisen between the parties with respect to whether the lease was then in force and effect by virtue of the production of oil or gas from the premises in paying quantities, and that the parties had agreed the lease might be kept in force and effect for a period of five years from the date of the instrument regardless of the amount of oil and gas that might be produced, saved and sold therefrom, for the considerations and subject to and upon the terms, provisions and conditions thereinafter set forth. It was then agreed in payment of $25,000 to the lessors the lease should remain in full force and effect for a period of one year without any operations whatsoever; that for the same consideration the lessees were granted the option to continue the lease in full force and effect for each of the years beginning December 28th, 1936, 1937, 1938 and 1939, whether any drilling or production operations be carried on or not, upon the pay-

ment of $20,887.40 to the lessors. It was further agreed that if at the end of such five year period oil or gas shall be produced from said premises, or if wells thereon be capable of producing oil or gas in paying quantities the lease shall remain in full force and effect so long as oil or gas is produced in paying quantities from any well or wells on the premises, or so long as any well or wells on said premises is capable of producing in paying quantities.

The agreement further provided that out of the $25,000 paid to the lessors, the lessors should pay to Storm $100, and out of any $20,887.40 received by them they should pay to Storm $80.

Paragraph VII of the agreement reads as follows: "It is mutually agreed that except as hereby specially modified said oil and gas mining lease of date May 5, A.D. 1923 shall be and remain in full force and effect according to its terms."

Storm and wife executed and acknowledged an endorsement made on the agreement of December 28, 1935, in consideration of the payment of the sum paid to them by the lessors, which ratified, confirmed and adopted said contract as to the lands owned by them in the above described premises which was bought by them subject to the terms of said lease and declared their oil, gas and mineral interests in said tract bound by the above agreement between the lessor and lessees, which 80-acre tract was described. The endorsement is dated January 20, 1936.

The question presented for determination is, has the lease terminated, as is claimed by the plaintiffs, or is it still in full force and effect as is contended by the defendants? We have been favored with full and exhaustive briefs on each of the questions here presented by each of the parties to this litigation, which briefs reflect both care and ability. It is usually difficult to find a case involving the exact facts presented in one to be determined and the case is usually to be decided on the basis of the terms of the instruments involved. Such is the case here.

 Plaintiffs say the original lease had terminated because of a failure to pro-

duce the property prior to the agreement of December 28, 1935, and the parties were left free to lease their property as they saw fit; that the agreement of December 28, 1935, was a new lease for a primary term of five years and a separate lease on Storm's 80-acre tract, which expired by virtue of its term because of a failure to drill or pay the rentals thereon. We are unable to agree with this position. Consistent with the law which is so well established as to make it elementary, plaintiffs agree the sale of their land subsequent to the original lease did not remove it from the lease and that it remained subject to all the provisions thereof so long as it remained in full force and effect. As we construe the agreements of June 30, 1933, and December 28, 1935, they merely extended and kept in force and effect the life of the lease upon considerations different from those contained in the lease. In other words, the primary term was extended by the payment of larger rentals in lieu of drilling and production operations.

We will assume, without entering upon a discussion of whether or not the lease did terminate prior to December 28, 1935, or conceding that it in fact did, that it did as is claimed by plaintiffs, because in our view if it did it does not help plaintiffs. The agreement of December 28, 1935, as quoted above, provided except as therein especially modified the original lease should remain in full force and effect. Neither the agreement nor the lease provided for the drilling of a well or wells on the 80-acre tract, nor did it provide for the payment of any rentals except the sums to be paid by the lessors when and if lessees paid lessors under the terms of the agreement. If plaintiffs obtained a new lease by virtue of the agreement then the terms of it was fixed by the provisions of the original lease and the agreement, which did not require the lessees to drill upon the 80-acre tract nor to pay rentals if production be had upon any of the lands embraced in the lease. The situation of plaintiffs remained just the same whether they got a new lease upon the terms of the old or merely renewed and extended the old lease. However, in our opinion when Storm and wife by their endorsement made on the contract of December 28, 1935, declared that "We, in consideration of the sum paid to us by the lessors as provided in the above described contract, the receipt of which is hereby acknowledged, do hereby ratify, confirm and adopt said contract as to the land owned by us in the above described premises which was bought by us subject to the terms of said lease, and declare that our oil, gas and mineral interests in said tract are bound by the above agreement between the lessors and lessees", they thereby plainly and unequivocally extended and renewed the original lease as written. We think the plain language may not be construed to mean anything else. Parties to a contract are bound by its plain terms and their intentions are to be ascertained from the language of the contract itself and not from what they supposed it to contain. Trinity County Lumber Co. v. Ocean Accident & Guarantee Co., Tex.Com.App., 228 S.W. 114; Reconstruction Finance Corp. v. Gossett, 130 Tex. 535, 111 S.W.2d 1066(T); to which many cases might be added.

The situation here presented does not differ essentially from one in which a note secured by a lien on property is barred by limitation. The maker may decline to pay the note and dispose of his property as he sees fit free from the lien, but if he extends the note, or renews and extends the note and lien then all the conditions and obligations of his contract are renewed and extended and put into full force and effect anew.

It is undisputed here portions of the land embraced in the original lease have abundantly produced and were capable of producing prior to the expiration of the extended term and the lease continued in force and effect as to the lands owned by the lessors, and we think under the plain terms of the original lease and the extension contracts the lease has likewise been continued in full force and effect as to the 80 acres owned by Storm.

We conclude, therefore, the judgment of the trial court is erroneous and should be reversed and rendered and accordingly it

is reversed and judgment here rendered that plaintiffs take nothing by their suit for title and for the oil and gas produced from the wells on said lands, and likewise that the same be reversed and rendered insofar as it permits a recovery in favor of the defendants for the improvements made in good faith on said lands and in any and all respects insofar as it permits any recovery by either party.