H.E. Butt Grocery Co. v. Wolf 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-266-CV





H.E. BUTT GROCERY COMPANY,



 APPELLANT


vs.





JAY WOLF,



 APPELLEE



 




FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL

DISTRICT


NO. 88-538-C, HONORABLE WILLIAM S. LOTT, JUDGE PRESIDING



 





 H.E. Butt Grocery Company ("HEB") appeals from a district-court judgment
awarding actual and exemplary damages and pre- and postjudgment interest to Jay Wolf on causes
of action for fraud, reformation, and breach of contract. Concluding that the evidence does not
support a recovery on any of Wolf's three causes of action, we will reverse the judgment below
and render judgment that Wolf take nothing.



BACKGROUND


 In January 1972, HEB leased from Wolf a building in Georgetown, Texas, for use
as a grocery store. Under the lease, Wolf received a base monthly rental of $2,333.33 and a
percentage rental of 1.25 percent of any of the Georgetown store's gross annual sales over
$2,240,000. To protect Wolf's percentage rental, the lease contained a "use restriction" providing
that, during the fifteen-year lease term, neither Wolf nor HEB could own, lease, or operate
another grocery store in Georgetown unless the city's population reached or exceeded 18,000.

 In 1979, Wolf and HEB began negotiating an amendment of the 1972 lease and
drafted a lease modification including one provision that would have obligated HEB to expand
Wolf's store. Although Wolf was willing to execute the lease modification, in late 1979 the head
of HEB's real estate division, Bill Horvath, met with Wolf to explain that HEB had reassessed
its position and was not ready to enter into the new agreement. The parties agreed, however, to
defer expansion negotiations to a later date.

 In 1983, Horvath sent Oscar Teegerstrom to Georgetown to resume expansion
negotiations with Wolf. Their initial discussions prompted an April 15, 1983 letter from
Teegerstrom to Horvath, in which Teegerstrom explained that "Mr. Wolfe [sic] would like to use
the same lease amendment . . . submitted [to] him in 1979 and incorporate the new rental
[payment] provisions." Horvath testified that, in response to the April 15th letter, he cautioned
Teegerstrom to make clear that HEB sought only an option to expand and did not want to bind
itself to do so. In a May 5, 1983 memorandum, Teegerstrom informed Horvath that he had
discussed with Wolf the subject of eliminating the use restriction prohibiting a second grocery
store and anticipated a favorable response. Wolf testified that, during their negotiations, he and
Teegerstrom never discussed either that HEB sought only an option or that HEB desired to
eliminate the use restriction.

 Sometime in May 1983, HEB's lawyer drafted the proposed "Lease Amendment
No. One" ("the Amendment") at the direction of Horvath and Teegerstrom. On May 27, 1983,
Teegerstrom sent Wolf a letter including the following remarks:



Attached are (3) copies of Lease Amendment No. One which we have prepared to
reflect those items we have agreed on:


(1) Expansion Area - The attached Exhibit B shows the area HEB may expand into
but, more importantly, it shows outlined in green the area you reserve for your
Gulf Station and future car wash.


(4) Use - This provides, in essence, that you won't put a grocery store next to us
or a business that would hurt the parking.



Also, this provides that this store will be a first class operation.


[Items (2), (3), and (5) through (9), bearing on other provisions]


Please review this and if there are no problems, sign all (3) copies and return to
me for H.E.B.'s signature. If you have any questions, please call me . . . .



 Both parties signed and executed the Amendment in June 1983. Besides dealing
with expansion of the Georgetown store, the Amendment provided that "[t]he use restrictions of
Paragraph 5 of the [1972] Lease shall be of no further force or effect." Because Paragraph 5
contained the prohibition against opening another store, this provision of the Amendment
effectively eliminated that use restriction, which had protected Wolf's percentage rental. Another
provision of the Amendment increased HEB's fixed monthly rent from $2,333.33 to $10,000.

 When HEB had taken no steps to begin the expansion of his store by the summer
of 1984, Wolf became concerned that HEB was not going to expand. About the same time, Wolf
evidently first realized that the Amendment had eliminated the prohibition against operating
another grocery store, leaving him unprotected from the possibility that HEB might build a new
store on another site. Over the course of the next three years, the parties attempted to resolve
their differences stemming from their conflicting views of the obligations created by the
Amendment. These efforts were unavailing, and HEB never expanded Wolf's store. In July
1988, HEB broke ground for a new Georgetown store on property owned by third parties.

 Wolf filed suit on September 29, 1988, asserting causes of action for fraud and
reformation; he later amended his petition to include a breach-of-contract claim. Following a
bench trial, the court below rendered judgment for Wolf. The trial court (1) found that HEB had
committed fraud, (2) reformed the Amendment, and (3) found that HEB had breached the
Amendment as written and as reformed. At HEB's request, the court entered findings of fact and
conclusions of law. The court awarded Wolf $750,000 in actual damages, $250,000 in exemplary
damages, attorney's fees of $20,000, plus pre- and postjudgment interest. On appeal, HEB
attacks the trial-court judgment by eleven points of error.



DISCUSSION


The Meaning of the Amendment

 Because the parties actually executed the Amendment, our analysis begins with the
meaning of and obligations imposed by that instrument. The crux of this dispute is whether the
Amendment bound HEB to expand Wolf's store. HEB maintains that the Amendment did not
obligate it to expand but merely granted it an option to do so. The trial court rejected HEB's
argument and construed the contract as a matter of law to require HEB to build the expansion. 
Although the trial court made no express conclusion of law that the Amendment was either
ambiguous or unambiguous, he impliedly concluded that the Amendment was unambiguous when
he construed the Amendment as a matter of law. Therefore, we will focus on whether the trial
court correctly construed the Amendment.

 In construing a written contract, the primary concern of the court is to ascertain the
true intentions of the parties as expressed in the instrument. R & P Enters. v. LaGuarta, Gavrel
& Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980) (emphasis added). To achieve this end, courts
should examine and consider the entire writing in an effort to harmonize and give effect to all the
provisions of the contract so that none will be rendered meaningless. Universal C.I.T. Credit
Corp. v. Daniel, 243 S.W.2d 154, 158 (Tex. 1951). No single provision taken alone will be
given controlling effect; rather, all the provisions must be considered with reference to the whole
instrument. Myers v. Gulf Coast Minerals Management Corp., 361 S.W.2d 193, 196 (Tex.
1962).

 The Amendment included the following provisions bearing on the proposed
expansion:



[I.A.] Tenant may, at its sole cost and expense, construct its leasehold
improvements consisting of a building . . . (the "Expansion Building"). Landlord
hereby consents to such construction of the Expansion Building upon the
Expansion Area.


. . . .


[I.B.] The Expansion Building shall be constructed upon the Expansion Area
pursuant to plans with specifications prepared by Tenant, which shall be those only
required by Tenant to reflect the construction it intends to perform.




(Emphasis added.) These two paragraphs provide the principal focus for the conflicting
constructions put on the Amendment by HEB and the trial court. HEB argues that the use of the
permissive word "may" in paragraph I.A grants it the option, but does not impose upon it the
obligation, to expand Wolf's store. HEB further argues that use of the mandatory word "shall"
in paragraph I.B merely requires that, should HEB exercise its option to expand, it must build
only upon the "Expansion Area." The trial court, by contrast, understands paragraph I.A to
address Wolf's consent to HEB to expand the store, whereas paragraph I.B describes HEB's
affirmative obligation to expand the store.

 When the paragraphs are read in conjunction with the entire instrument, we believe
that only HEB's construction fully encompasses the parties' objective intent. If, as the trial court
concluded, the Amendment had affirmatively obligated HEB to expand Wolf's store, HEB would
have had no reason to secure the elimination of the use restriction. HEB's only purpose for
deleting the restriction must have been to acquire the latitude to build a new store elsewhere. It
would have been wholly inconsistent with that purpose for HEB to bind itself, in the same
agreement, to expand the original store and thereby eliminate any consideration of another store. 
Hence, paragraph I.B, which contained mandatory language, merely provided that if HEB chose
to exercise its option, it had to build on a specific location. Similar language in paragraph II
provided that HEB "is granted the option of renewing and extending this lease" and that "[w]ritten
notice of the exercise of the right to renew and extend the lease . . . shall be given." (Emphasis
added.) Paragraph II thus presents another instance where HEB secured an option the exercise
of which would be attended by mandatory action.

 We conclude that the trial court's construction of the Amendment fails to harmonize
and give meaning to all of the contract's provisions. Therefore, we hold that the Amendment
granted HEB the option, but did not impose the obligation, to expand Wolf's store. We sustain
HEB's third point of error insofar as it challenges the trial court's conclusion that HEB breached
the Amendment as written.



Fraud

 In its first point of error, HEB challenges the sufficiency of the evidence to support
a finding that HEB committed fraud. The court found that HEB committed fraud both by
misrepresenting to Wolf that the Amendment as drafted accurately reflected "the agreement
negotiated by the parties" and by falsely promising that it would expand Wolf's building. We will
discuss these individual findings separately.

 Misrepresentation of the Amendment. The finding of misrepresentation apparently
rests on Wolf's allegations that (1) HEB eliminated the use restriction from the Amendment even
though Wolf and Teegerstrom had never discussed doing so, and (2) HEB drafted the Amendment
so as not to bind itself to expand the store even though Teegerstrom and Wolf had agreed that
HEB would expand. A finding of misrepresentation based on elimination of the use restriction
does not comport with the case authorities. A party claiming fraud in an arm's-length transaction
must use ordinary care to protect his own interests and is charged with knowledge of all facts that
a reasonably prudent person similarly situated would have discovered. Thigpen v. Locke, 363
S.W.2d 247, 251 (Tex. 1962) (citing Courseview, Inc. v. Phillips Petroleum Co., 312 S.W.2d
197, 205 (Tex. 1957)). A party's "failure to exercise reasonable diligence is not excused by mere
confidence in the honesty and integrity of the other party." Id. Furthermore, a party who had
the opportunity to read a written contract is charged with knowledge of its terms and is not
justified in relying on what the other party to the contract says about it. Bifano v. Econo Builders,
Inc., 401 S.W.2d 670, 675 (Tex. Civ. App.--Dallas 1966, writ ref'd n.r.e.).

 While the above authorities charge a party with knowledge of the contract's terms
provided the party merely had the opportunity to read the contract, Wolf testified that he actually
did read the Amendment before signing it. The Amendment expressly stated that "[t]he use
restrictions contained in Paragraph 5 of the Lease shall be of no further force or effect . . . ." 
Paragraph five of the original lease prohibited additional grocery stores and was labelled "USE
RESTRICTIONS." Moreover, the record reflects that Wolf was a businessman with many years'
experience who had represented himself in numerous real estate transactions. We believe that
Wolf, by exercising due diligence, would have discovered that the Amendment eliminated the use
restriction. In light of the case law, we conclude that the evidence is legally insufficient to
support a finding that HEB committed fraud by failing to point out that the amended lease
eliminated the restriction against operating additional grocery stores in the area.

 With regard to the second basis for misrepresentation, as we understand Wolf's
argument and testimony, (1) Teegerstrom led him to believe that HEB would expand his store and
then induced him to execute the Amendment by indicating in the May 27, 1983 letter that the
Amendment reflected their agreement to that effect. The same principles barring Wolf's fraud
claim as to elimination of the use restriction disallow fraud based on Teegerstrom's May 27, 1983
letter. That document purports to reflect the agreement Wolf and Teegerstrom had negotiated;
in short, it is Teegerstrom's description of the amended lease. As noted above, a party who had
the opportunity to read a contract may not rely on what the other party said about it. Bifano, 401
S.W.2d at 675.

 The record nowhere suggests that Wolf was unable to review the Amendment to
determine whether, as drafted, it satisfactorily delineated the agreement negotiated. Nor does the
evidence demonstrate that Teegerstrom or HEB possessed special knowledge that they
misrepresented to or withheld from Wolf. Cf. Trenholm v. Ratcliff, 646 S.W.2d 927, 932 (Tex.
1983) (finding of fraud upheld when developer who encouraged investment in subdivision
purported to have special knowledge of uses of neighboring tracts). Rather, Teegerstrom merely
stated that the Amendment encompassed the salient points of an agreement that the parties had
personally negotiated. Because Teegerstrom's letter constitutes only a subjective opinion of what
the actual agreement was, and because Wolf himself was well situated to determine the accuracy
of that opinion, he was not justified in relying on Teegerstrom's statement.

 Wolf's fraud claim also fails when reviewed under the traditional six-part test for
fraud. To recover for fraud, a plaintiff typically must prove that: (1) a material representation
was made; (2) it was false; (3) the speaker knew it was false when made or the speaker made it
recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made
it with the intention that it be acted upon by the other party; (5) the party acted in reliance upon
it; and (6) damage resulted. Stone v. Lawyers Title Ins. Corp., 554 S.W.2d 183, 185 (Tex. 1977).

 Assuming, arguendo, the materiality of the representations in Teegerstrom's letter,
Wolf also had to prove their falsity. Accordingly, Wolf had to show that he and Teegerstrom had
actually agreed that HEB would obligate itself to expand the store. Although Wolf testified that
Teegerstrom had stressed HEB's desire to expand the store, he acknowledged that Teegerstrom
never actually committed HEB to the expansion. More importantly, no evidence exists that
Teegerstrom or HEB understood that the parties had agreed or intended to bind HEB to expand
rather than merely to grant the option to expand. Teegerstrom's indications to Wolf that HEB
wanted to expand are not inconsistent with intending to bargain only for an option to do so.

 Although Wolf testified that he believed, based on his negotiations with
Teegerstrom, that HEB wanted to and would expand his store, such testimony is evidence only
of Wolf's subjective understanding and not of the agreement actually negotiated. Moreover, while
Wolf testified that Teegerstrom never expressly revealed that HEB sought only an option to
expand, there is no evidence that Wolf demanded a binding obligation from HEB as a condition
of executing the Amendment. Consequently, we believe the record evidence is legally insufficient
to support a finding of misrepresentation based on Teegerstrom's May 27th letter and HEB's
alleged misdrafting of the Amendment.

 False Promise. We believe the trial court similarly erred in finding that HEB
committed fraud by falsely promising to build an expansion. Assuming for present purposes that
HEB had so promised, such promise would only be a promise to perform a future act. 
Consequently, besides having to meet the six part burden of proof for fraud, Wolf had to show
that, at the time HEB allegedly promised to build the expansion, it had no intention of performing. 
Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp., 823 S.W.2d 591, 597 (Tex. 1992);
Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986).

 The only evidence Wolf offered of HEB's present intent not to perform a promise
to expand was (1) evidence that HEB never built the expansion; (2) Wolf's opinion that HEB had
no present intent to perform; and (3) evidence that HEB explored the possibility of building a new
store elsewhere before it executed the Amendment. None of this evidence constitutes any proof
that HEB had a present intent not to expand when it purportedly promised to do so.

 First, the mere failure to fulfill a promise is no evidence of a present intent not to
perform. T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 222 (Tex. 1992); Crim,
823 S.W.2d at 597; Spoljaric, 708 S.W.2d at 434-35. Second, Wolf's opinion concerning HEB's
intent is no evidence of that intent. See Levine v. Loma Corp., 661 S.W.2d 779, 784 (Tex.
App.--Fort Worth 1983, no writ) (affidavit in which plaintiff expressed opinion that defendant had
no intent to perform was no evidence of defendant's intent); see also Calvert v. Union Producing
Co., 402 S.W.2d 221, 227 (Tex. Civ. App.--Austin 1966, writ ref'd n.r.e.) (mere conjecture is
not sufficient to show fraud).

 Finally, HEB's study of building a new store reveals only that HEB was exploring
various options for improving and increasing its Georgetown operations. Examining alternatives
to the expansion of Wolf's store is not evidence that HEB never intended to perform. See T.O.
Stanley Boot, 847 S.W.2d at 222 (evidence that defendant bank investigated alternative means of
financing does not constitute evidence that bank never intended to lend plaintiff $500,000). Based
on our review of all the evidence, we conclude that the trial court's finding that HEB committed
fraud by falsely promising to expand Wolf's store is unsupported by legally sufficient evidence. 
We sustain HEB's first point of error.



Reformation

 In its fourth point of error, HEB argues that the trial court erred in reforming the
Amendment because there is no legally or factually sufficient evidence of any ground for
reformation. A court should only reform a contract when it was executed through mutual mistake
or through a mistake by one party fraudulently induced by the other party. Spellman v. American
Universal Inv. Co., 687 S.W.2d 27, 31 (Tex. App.--Corpus Christi 1984, writ ref'd n.r.e.); see
also Sun Oil Co. v. Bennett, 84 S.W.2d 447, 451 (Tex. Comm'n App. 1935, judgm't adopted). 
Wolf neither pleaded nor presented any evidence of mutual mistake; rather, the basis for his
reformation claim is his theory that HEB induced a mistake on his part by committing fraud. 
However, as we concluded in our discussion of HEB's first point of error, the evidence does not
support a finding that HEB fraudulently induced Wolf to execute the Amendment. Consequently,
any mistake by Wolf in entering into the Amendment could only have been unilateral, and such
one-sided error standing alone offers no basis for reforming a contract. Capitol Rod & Gun Club
v. Lower Colorado River Auth., 622 S.W.2d 887, 892 (Tex. App.--Austin 1981, writ ref'd n.r.e.). 
We sustain HEB's fourth point of error. Furthermore, because HEB cannot be liable for
breaching the Amendment as reformed, we sustain the remainder of HEB's third point of error
as it challenges that basis for the judgment below. 

 Having sustained HEB's first, third, and fourth points of error and thereby
eliminated any basis for Wolf's recovery of damages, we need not address HEB's remaining
points of error.



 CONCLUSION


 Based on the foregoing, we reverse the judgment of the trial court and render
judgment that Wolf take nothing.



 

 Bea Ann Smith, Justice

[Before Justices Powers, Aboussie and B. A. Smith]

Reversed and Rendered 

Filed: May 26, 1993

[Do Not Publish]

1. [1]  Teegerstrom's death before Wolf filed suit prevented HEB from presenting "eyewitness"
testimony of the negotiations to counter Wolf's testimony of the same events.