NUMBER
13-04-307-CV

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF TEXAS

                         CORPUS
 CHRISTI B EDINBURG

 

 

CASTLE TEXAS
OIL AND GAS LIMITED

PARTNERSHIP, DELTA PETROLEUM CORP,

AND BWAB LIMITED LIABILITY COMPANY,                               Appellants,

                                                              

v.

 

DOMINION OKLAHOMA TEXAS EXPLORATION

AND PRODUCTION,                                                                           Appellee

 

 

                      On appeal from the 25th
District Court

                                          of
Lavaca County Texas

 

Before Justices Hinojosa
and Justices Rodriguez and Wittig[1]

 

   Memorandum Opinion by Assigned Justice Wittig








This oil and gas case is an appeal from a final
summary judgment.  Castle Texas Oil &
Gas, L.P., Delta Petroleum Corporation, and BWAB Limited Liability Company,
(hereinafter Aappellants@ or ACastle@) contend they were unlawfully deprived of
overriding royalties.  In three issues,
Castle contends that appellee, Dominion Oklahoma Texas Exploration &
Production, Inc. (Dominion), refuses to pay the contractually required
10.65234% override and instead is only paying 7.101562%.  In the first issue, Castle argues that the
trial court erred as a matter of law in construing the various assignments[2]
and agreements giving rise to the overrides. 
Alternatively, by the second issue, Castle contends that there is a fact
issue preventing summary judgment.  In
the third issue, Castle complains the trial court erred in granting restitution
to Dominion.  We modify the judgment (1)
to delete the requirement to refund to Dominion the amount of overpayment, (2)
to delete the provision for post-judgment interest, and (3) to delete
execution, and we affirm the judgment as modified.

I.  Standard
of Review 








We review the trial court's granting of a motion for
summary judgment de novo. Natividad v. Alexsis, Inc., 875 S.W.2d
695, 699 (Tex. 1994); Tex. Commerce Bank Rio Grande Valley v. Correa, 28
S.W.3d 723, 726 (Tex. App.BCorpus Christi 2000, pet. denied).  Dominion was required to establish that no
genuine issue of material fact existed and that judgment should be granted as a
matter of law.  See Tex. R. Civ. P. 166a(c); Nixon v.
Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  Where the only question presented to the
trial court was a question of law and both sides moved for summary judgment,
the appellate court should render the judgment that the trial court should have
rendered.  See Coastal Liquids
Transp., L.P. v. Harris County Appraisal Dist., 46 S.W.3d  880, 883 (Tex. 2001); Jones v. Strauss, 745
S.W.2d 898, 900 (Tex.1988); Cigna Lloyds Ins. Co. v. Bradleys' Elec., Inc.,
33 S.W.3d 102, 104 (Tex. App.BCorpus Christi 2000, pet. denied); The Cadle Co.
v. Butler, 951 S.W.2d 901, 905 (Tex. App.BCorpus
Christi 1997, no writ).

II. The Petrosil Override

In their first issue, Castle argues their interest
is based on an overriding royalty interest, the APetrosil
override,@ created in 1980 by letter agreement.  The Petrosil override provided that if the
Grantees drill or cause to be drilled a new well, that the Grantees shall
convey to Grantor an overriding royalty interest: Aequal to the difference between all existing
royalties, overriding royalties, and other lease burdens, if any, of record as
of date hereof, which are payable out of the interests in such leases conveyed
hereby, and 25% of 8/8th. . . . @  This
conveyance thus provided a formula between existing royalties and 25% of
8/8ths.  Because the Liles/Besama
override was not listed as an attachment to the assignment, Castle argues the
parties did not consider the Liles/Besama override to be a burden on the lease
on the date of their agreement.  At the
same time, Castle concedes that the parties were aware of the obligations under
the July 29, 1977 letter agreement giving rise to the Liles/Besama obligations,
including the Liles/Besama override.

The July 29, 1977 letter agreement provided that in
the sale from Samoco to Sulpetro, Samoco retained a bifurcated interest
contingent upon the depth a well was to be drilled: 

[I]f said well is drilled at a depth greater than
the deepest previously established productive zone . . . then Samoco shall be
deemed to have exchanged and converted without further action by either party
its 10% interest in the lease for an overriding royalty interest in that
lease...determined by a sliding scale formula as set forth below, based on the
net revenue interest of Sulpetro in the lease. . . . 

 








Samoco was owned in part by Liles and St.
Martin.  In 1978, Sulpetro assigned the
above 10% to  Samoco=s designees, Liles and Besama.   Although the 1977 letter was not recorded at
that time, it was later referenced in attachments to recorded assignments.  Petrosil later succeeded to Samoco=s 90% working interest.  Another company, TXO, then  contracted separately with both Petrosil and
Liles/Besama to purchase the 90% and 10% working interests respectively.  Petrosil, however, retained an override equal
to the difference between existing burdens and 25% of 8/8ths.  TXO did not acquire the 5% Liles/Besama override
in deep zones.  Furthermore, contrary to
Castle=s position, the 5% Liles/Besama override was later
confirmed and recorded as a burden already created in the July 29, 1977
letter.  Castle became the successor to
the Petrosil override, and Dominion acquired its working interest in the
Mitchell lease in 2000.

In sum, Castle urges that the written documents
creating the Petrosil Override clearly show that the parties did not intend for
there to be a reduction in royalties because of the Liles/Besama Override.[3]  Castle contends that because the 1977 letter
was not recorded, there were no existing royalties, and because the override
was not listed as an attachment to the assignment, the subsequent Petrosil
override was not reduced at all by the Liles/Besama override.  








We disagree with this argument for several
reasons.  First, as admitted by Castle,
the parties, including Castle, were aware of the burden arising from the 1977
letter (i.e., the obligations to Liles/Besama). 
Next, the override was recorded in 1979, 
prior to the 1980 sale.   In
addition, when TXO acquired the 10% working interest held by Liles/Besama, TXO
did not acquire the 5% override in the deep zones.  This was clearly retained by Liles/Besama. In
the recorded conveyance, the 1977 letter agreement was again acknowledged, and
there was a specific reservation and retention of the deep zone override.  We also agree with Dominion in that there
could not be a Petrosil override if the lease burden already equaled or
exceeded 25% of 8/8ths.  As we noted
above, Petrosil was limited by its override agreement to the difference between
existing burdens and 25% of 8/8ths. 
Because we conclude the Liles/Besama override was an existing burden,
Petrosil=s override was correspondingly reduced.

Castle also urges that the February 11, 1980 letter
agreement states that TXO would assume the seller=s
obligation to the Liles/Besama group as noted in the 1977 letter.  Castle, however, overlooks the language Asubject to the conditions herein.@  These
referenced conditions specifically limited the Petrosil override to the
difference between existing burdens and 25% of 8/8ths.  Because we conclude the trial court did not
err in construing the relevant assignments and agreements, we overrule Castle=s first issue.

III. 
Ambiguity in Contract

Next, Castle argues in their second issue that if
they do not prevail as a matter of law on the documents, there must be an
ambiguity which creates a fact issue and precludes summary judgment.  While they disagree with the trial court=s assessment of the documents, Castle points to no
specific ambiguity in its brief.  A
contract is not ambiguous if it can be given a certain or definite legal
meaning or interpretation.  See Columbia
Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589
(Tex.1996); Friendswood Dev. Co. v. McDade & Co., 926 S.W.2d 280,
282 (Tex.1996).  Having found a
reasonable legal interpretation of the relevant contracts above, we overrule
Castle=s second issue.








IV. Overpayment by Dominion

In their last issue, Castle maintains they should
not be required to refund Dominion its overpayment of $782,688.09.  We agree. 
Dominion=s position regarding this overpayment presents a
conundrum.   First, it argues that its
current calculation of Castle=s royalties are correct as a matter of law, thus
entitling them to summary judgment.  At
the same time, Dominion insists that the prior overpayment of royalties was due
to a mistake of fact, not law, because it used the wrong calculation in
overpaying Castle.  According to
Dominion, its mistake of fact was based upon the inherited royalty payment
calculations.  It assumed the payment
calculations were correct as it stated in its appellate brief:  AIndeed, there is no evidence that Dominion
considered the legal implications of its royalty payments at all.@

 Dominion
argues that money paid under a mistake of fact may be recovered even when the
party had knowledge of the possible mistake unless the payment was made
intentionally and in circumstances showing a determination to pay without
choosing to investigate.  See Gulf Oil
Corp. v. Lone Star Prod. Co., 322 F.2d 18, 31-33 (5th Cir. 1963).  More to the point, however, is Dominion=s citation to Hull v. Freedman, 383 S.W.2d
236, 239 (Tex. Civ. App.BFort Worth 1964, writ ref=d. n.r.e.). 
In that case, royalties were based on the number of barrels produced per
day.  Hull was overpaid when production
slipped below the stated threshold. 
However, the payor was allowed recovery because of an unintentional
mistake of fact.  Id. at 239.  In Hull, the payor was initially
mistaken about the drop in production.  Id.  Hull illustrates a true mistake of fact
because the payor was unaware of the production drop.  The parties were fully cognizant of the
formula based upon the assignments and the mistake was clearly not one of law.








In its motion to the trial court Dominion maintained
the following:  ADominion received the Supplemental Title Opinion on
March 6, 2002, which reflected that Dominion has been incorrectly paying the
overriding royalty burdens on the Mitchell Lease.  The Supplemental Title Opinion revealed the
fact that the Liles/St. Martin Override should reduce the Castle Override.@  As a
consequence of the supplemental title opinion, Dominion then reduced its
payments to Castle and sought reimbursement. 
Thus, Dominion changed the calculation of royalties based upon legal
documents, not because of some factual mistake. 
  Castle argues that Texas law is
settled that Amoney voluntarily paid on a claim of right, with
full knowledge of all facts, in the absence of fraud, duress, or compulsion,
cannot be recovered back merely because the party at the time of payment was
ignorant of or mistook the law as to his liability.@  Pennell
v. United Ins. Co., 243 S.W.2d 572, 576 (Tex. 1951); see San Antonio
I.S.D. v. Nat=l Bank of Comm. of San Antonio, 626 S.W.2d 794, 797 (Tex. Civ. App.BSan Antonio 1981, no writ) (tax refund is not barred
by the general rule pertaining to voluntary payment of taxes where there is
mutual mistake);  State v. Texas Elec.
Service Co., 488 S.W.2d 878, 881 (Tex. Civ. App.BFort Worth 1972, no writ) (money paid under a
mistake of law cannot be recovered).








We agree. 
Dominion either had or was charged with knowledge of the relevant
documents defining the royalties and overrides. 
Dominion came to its present position by its own admission because of a
supplemental title opinion, not because of new or previously undeterminable
facts.  The interaction and
interpretation of legal documents is a question of law, not of fact.  Bifano v. Econo Builders, Inc., 401
S.W.2d 670, 676 (Tex. Civ. App.BDallas 1966, writ ref=d
n.r.e.).  AParties
to a contract are bound by its plain terms and their intentions are to be
ascertained from the language of the contract itself and not from what they
supposed it to contain.@  Id.
(citing Magnolia Petroleum Co. v. Storm, 239 S.W.2d 437, 440 (Tex.
Civ. App. 1950,  writ ref=d n.r.e.). 
Dominion=s obligations, vel non, to pay overrides were
at all material times derived from the underlying legal documentation.  Without such obligations, Dominion owed no
royalties to Castle.   Its mistake of law
was corrected when the 2002 supplemental title opinion was implemented.  We sustain Castle=s third issue.

Accordingly, we modify the judgment (1) to delete
the requirement to refund to Dominion the amount of overpayment, (2) to delete
the provision for post-judgment interest, and (3) to delete execution.  We affirm the judgment of the trial court as
modified.

 

Don
Wittig,

Assigned
Justice

Memorandum Opinion
delivered and filed

this 28th
day of July, 2005.











[1]Retired Fourteenth Court of Appeals
Justice Don Wittig assigned to this Court by the Chief Justice
of the Supreme Court of Texas pursuant to the government code.  See Tex.
Gov=t Code Ann. ' 74.003
(Vernon Supp.
2004-05).





[2]Some nineteen different assignments
are noted in the record.   This
memorandum opinion assumes the familiarity of these and other pertinent
documents by the parties.  See Tex.
R. App. P. 47.1.





[3] We note that on the one hand Castle argues it is entitled to judgment
as a matter of law, and on the other hand, its second issue maintains there are
fact questions.